# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ISAAC PORTERFIELD, | ) |
| Plaintiff, | ) ) |
| | ) No. 2:19-cv-02885-JTF-atc |
| v. | ) ) |
| SHELBY COUNTY JAIL, ET AL., | ) ) |
| Defendants. | ) ) |

## ORDER DISMISSING THE COMPLAINT WITHOUT PREJUDICE (ECF NO. 1) AND GRANTING LEAVE TO AMEND

On December 23, 2019, Plaintiff Isaac Porterfield, who is incarcerated under booking number 1912425 at Shelby County Criminal Justice Center ("Jail"), in Memphis, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On June 12, 2020, the Court granted him leave to proceed *in forma pauperis* and assessed the $350 filing fee. (ECF No. 14.)

Plaintiff sues: the Jail; Shelby County Jail DRT Team[1]; and Judge Lee Coffee. His complaint suggests claims for judicial misconduct and excessive force. He seeks $30 million in relief. (ECF No. 1 at PageID 5-6.)

## I.  BACKGROUND

Porterfield states that several unidentified members of the DRT Team assaulted him when they "came and got me to go back to prison." (ECF No. 1 at PageID 5 (the Incident).) Afterwards,

---

[1] The Court construes Plaintiff's "DRT" designation to refer to Direct Response Team. *See, e.g., Burns v. Shelby Cnty.*, No. 16-3017, 2018 WL 6186805, at *1 (W.D. Tenn. Nov. 27, 2018).

they allegedly continued their assault at an unspecified medical facility. (*Id.*) He does not identify the date of these events, the particular actors involved, or his putative injuries. (*See id.*)

## II.     LEGAL STANDARDS

### A.     Screening Requirements

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint —

(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the Court applies the standards of Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009) and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts a plaintiff's "well-pleaded" factual allegations as true and then determines whether the allegations "'plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."

383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

  **B.** **Requirements To State A Claim Under 42 U.S.C. § 1983**

  Plaintiff filed his complaint (ECF No. 1) pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

**III.** **ANALYSIS**

  **A. Official Capacity Claims Against The DRT Team, The Jail & Judge Coffee**

  Plaintiff sues the DRT Team in their official and individual capacities.  (ECF No. 1 at PageID 4.)  He does not specify whether he sues the Jail and Judge Coffee in their official or individual capacities.

  The Sixth Circuit requires plaintiffs to "set forth clearly in their pleading that they are suing the state defendants in their individual capacity for damages, not simply in their capacity as state

3

officials." *Wells*, 891 F.2d at 592. "Absent a specification of capacity, it is presumed that a state official is sued in his official capacity." *Northcott v. Plunkett*, 42 F. App'x 795, 796 (6th Cir. 2002) (citing *Wells*, 891 F.2d at 593). As such, Plaintiff's official capacity claims against the DRT Team and the Jail are treated as claims against Shelby County. His official capacity claims against Judge Coffee are treated as claims against the State of Tennessee.

As to official capacity claims against the DRT Team and the Jail, a local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994). A municipality may be held responsible for a constitutional deprivation only if there is a direct causal link between a municipal policy or custom and the alleged deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). A plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Porterfield does not describe any Shelby County policy or custom, much less one that is unconstitutional or pursuant to which Defendants acted. Furthermore, "the Shelby County Jail is not an entity subject to suit under § 1983." *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL

1720959, at *2 (6th Cir. Nov. 6, 2000). Porterfield therefore does not state a claim against Shelby County, the DRT Team, or the Jail in their official capacities.

As to official capacity claims against Judge Coffee, such claims are treated as against the State. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff, however, does not state a valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived its sovereign immunity and therefore may not be sued for damages. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71. Plaintiff therefore does not state a claim against Judge Coffee in his official capacity.

### B. Individual Capacity Claims For Excessive Force Against The DRT Team

Plaintiff's excessive force claims are dismissed for two reasons.

First, a § 1983 plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Porterfield cannot make vague claims against a universe of unspecified "DRT Team" members who have no notice of claims against them. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596–97 (6th Cir. 2012) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)) (affirming district court's dismissal of complaint that "makes only categorical references to 'Defendants'" and holding that the complaint failed to "'allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right'").

Second, Plaintiff's excessive force claims do not sufficiently plead constitutional deprivation. He states that an unidentified DRT Team member "threat[ened]" him. When Porterfield "defended" himself, "about 6 – 7 DRT officers jumped on me, sprayed me, and assaulted me." While Plaintiff was on the floor in handcuffs, "they jumped and kicked me." Once at the medical center, "they jumped and assaulted me again." (ECF No. 1 at PageID 5.) The record seems to suggest that the Incident occurred during Plaintiff's arrest.[2] Porterfield's allegations are construed as a claim of excessive force.

Claims of excessive force by law enforcement personnel are evaluated under the Fourth Amendment's objective reasonableness standard in view of the "totality of the circumstances." *Graham v. Connor*, 490 U.S. 386, 395-96 (1989). The Supreme Court has held that "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. 396 (citation omitted). As in other areas of inquiry

---

[2] Porterfield states that the DRT Team "came and got me to go back to prison." (ECF No. 1 at PageID 5.) He filed his complaint with this Court on December 23, 2019. (ECF No. 1.) According to the Tennessee Department of Correction's Felony Offender Information website, Porterfield's ten year sentence ended on December 19, 2019. (*See* https://apps.tn.gov/foil-app/details.jsp (indicating that Porterfield is presently on "inactive" supervision status in the TDOC system).) This suggests that any charges for which Porterfield was taken into custody during the Incident were unrelated to his prior incarceration. However, the Court makes no finding on this point, as it is not dispositive to the relevant issues for this screening.

under the Fourth Amendment, whether a particular use of force is unconstitutional depends on its reasonableness in light of the facts and circumstances confronting officers. *Id*. at 396-97. To determine whether an officer's use of force was reasonable, courts examine the totality of the circumstances, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Deciding whether an officer's use of force was reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396. The inquiry is highly fact-dependent, and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id*.; *Morrison v. Bd. of Trs. of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (citations omitted) (quoting *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002)); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001). Courts take the objective viewpoint of "a reasonable officer on the scene" and recognize that "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." *Parker v. Henderson Cnty.*, No. 05-1358, 2006 WL 2882913, at **1, 9 (W.D. Tenn. Oct. 5, 2006) (citing *Graham*, 490 at 396 (1989) (internal citations omitted)). The Supreme Court has further explained:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). Such factors are not "exclusive." Rather,

they merely "illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Id*. *See also Coley v. Lucas Cnty.*, 799 F.3d 530, 538 (6th Cir. 2015). Courts' analysis into the reasonableness of the force should contain built-in deference to officers' frequent need to make split-second decisions. *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002). When officers use force multiple times, the Sixth Circuit has found it appropriate to divide the incident into segments and to analyze each use of force on its own terms. *See Harris v. City of Circleville*, 583 F.3d 356, 365 (6th Cir. 2009).

Porterfield contends that Defendants used excessive force at two distinct points: (1) during the Incident; and (2) afterwards at a medical facility.

As to force during the Incident, Porterfield's complaint fails to allege facts showing that DRT Team members' use of such was excessive. Porterfield does not describe what occurred prior to, during, or after the Incident at the scene. He states only that when the DRT Team arrived at his unspecified location, he questioned them why his son had a broken arm. (ECF No. 1 at PageID 5.) A verbal disagreement ensued which then led to the use of force, but Plaintiff does not describe the Incident's circumstances. For example, he does not explain why he was being taken back to the Jail, whether he resisted arrest, or which individual Defendants used particular types of force. Nor does Plaintiff's complaint inform whether he posed any threat to officers or bystanders. Such facts inform the Court's consideration of the totality of the circumstances. *See, e.g.*, *Morrison v. Bd. of Trs. Of Green Twp.*, 583 F.3d 394, 404-05 (6th Cir. 2009) (under the Fourth Amendment, "once the detainee ceases to pose a threat to the safety of the officers or others, the legitimate government interest in the application of significant force dissipates"); *Baker v. City of Hamilton*, 471 F.3d 601, 607 (6th Cir. 2006) (the Sixth Circuit has "held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law") (collecting cases).

Furthermore, the very act of arrest necessarily carries with it the right to use some degree of physical force in the first place. *See Graham*, 490 U.S. 396. In short, Plaintiff offers no facts about the Incident's totality of circumstances from which this Court could plausibly infer any basis for relief.

As to post-Incident force at the medical facility, Plaintiff's complaint suffers similar pleading insufficiencies. He alleges that the DRT Team "assaulted me again" (ECF No. 1 at PageID 5), but he neither identifies the individual actors nor describes: the circumstances; whether he resisted or posed a threat; the type of force used; or whether he sustained injuries. *See Kingsley*, 135 S.Ct. at 2473; *Graham*, 490 U.S. at PageID 396. Porterfield offers this Court no facts from which to infer the totality of circumstances at the medical facility that render the use of force there unconstitutional.

Porterfield fails to state a claim to relief against the Jail's DRT Team.[3] Accordingly, Plaintiff's excessive force claims are DISMISSED.[4]

### C. Individual Capacity Claims Against Judge Coffee

Even if this Court were to liberally construe the complaint as pursuing individual capacity claims against Judge Coffee, those claims still require dismissal for failure to state a claim.

---

[3] Even if the Court were, alternatively, to consider the DRT Team as an arm of the Shelby County Sheriff's Office or the Memphis Police Department, the result is the same for screening purposes. First, the Sheriff's Office is not a "person" subject to suit under § 1983. *See Dowdy v. Shelby Cnty. Sheriff's Office*, No. 18-2310, 2019 WL 3948110, at *2 (W.D. Tenn. Aug. 21, 2019). Second, it is well established that police departments are not entities capable of being sued under § 1983. *See Duck v. Madison Cnty. Sheriff's Dep't*, No. 17-1043, 2018 WL 4381279, at *2 (W.D. Tenn. May 21, 2018).

[4] Furthermore, even if Porterfield was subjected to excessive force during or after the Incident, any such claims that arose prior to December 23, 2018 are barred by the one-year statute of limitations. (*See* ECF No. 1 (complaint filed on December 23, 2019).) The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1)(B). *See Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005).

Porterfield names Judge Coffee as a Defendant but does not particularly explain why. (ECF No. 1 at PageID 4-5.) Liberal construction of the complaint could suggest either that: Judge Coffee was responsible for criminal charges wrongfully asserted against Plaintiff; or the Judge issued the warrant for Plaintiff's arrest. Under either construction, the complaint does not state a claim to relief.

"Judicial immunity" is shorthand for the absolute immunity doctrine that protects judges from suit both in their official and individual capacities. *DePiero v. City of Macedonia,* 180 F.3d 770, 783–84 (6th Cir. 1999). Even though a State's sovereign immunity does not preclude individual capacity suits against state officials for damages under § 1983, the judicial function is still protected by the common-law doctrine of judicial immunity. *Dixon v. Clem,* 492 F.3d 665, 674 (6th Cir. 2007). Judicial immunity is expansive and provides "immunity from suit, not just from ultimate assessment of damages." *Mireles v. Waco,* 502 U.S. 9, 11 (1991). In other words, judges, in the performance of their judicial functions, are absolutely immune from civil liability. *See Mireles*, 502 U.S. at 9–10; *Stump v. Sparkman*, 435 U.S. 349, 363 (1978); *Bright v. Gallia Cnty.*, 753 F.3d 639, 648–49 (6th Cir. 2014).

Judicial immunity is abrogated only when a judge is not acting in a judicial capacity, or when the judge acts in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11–12. Whether a judge or other official is entitled to absolute immunity in a given case turns on a "functional" analysis. *Harlow v. Fitzgerald*, 457 U.S. 800, 810-11 (1982). The "touchstone" for applicability of absolute judicial immunity is "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993). "Control of the docket is a function for which judges are entitled to absolute immunity." *Kipen v. Lawson*, 57 F. App'x 691, 691 (6th Cir. 2003); *see also Lucas v.*

*Holland*, No. 16-2309-JDT-cgc, 2017 WL 1088300, at *5 (W.D. Tenn. March 22, 2017), *aff'd*, No. 17-5425, 2017 WL 4764472, (6th Cir. Sept. 26, 2017) (actions taken "during the course of criminal proceedings ... clearly are within ... the scope of the[] [judges'] judicial function").

Accordingly, if a judge pursued the challenged conduct in the course of his judicial duties, then he will clearly be entitled to judicial immunity. *Palazzolo v. Benson,* No. 95-1067, 1996 WL 156699, at *4 (6th Cir. April 3, 1996). A judge will not be deprived of immunity because the action he took may have been in error, was done maliciously, or was in excess of the judge's authority. *Mireles,* 502 U.S. at 11; *Pierson v. Ray,* 386 U.S. 547, 554 (1967). Rather, a judge will be subject to financial liability involving the performance of a judicial act only when the judge has acted in the clear absence of all jurisdiction. *Stump*, 435 U.S. at 356-57; *Pulliam v. Allen,* 466 U.S. 522 (1984). A judge so acts only if the matter is clearly outside the subject matter jurisdiction of the court over which he presides. *King v. Love,* 766 F.2d 962, 965 (6th Cir.), *cert. denied,* 474 U.S. 971 (1985).

Issuing arrest warrants and presiding over criminal proceedings are clearly within the scope of state judges' jurisdiction. Therefore, individuals such as Judge Coffee are immune from suit for those acts. Porterfield fails to state a claim against the Judge in his individual capacity.

## IV.    AMENDMENT UNDER THE PLRA

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001)

11

("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court grants Plaintiff leave to amend.

V.      **CONCLUSION**

For all of the reasons explained above:

(1) The complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b); and

(2) Leave to amend is **GRANTED**. Any amendment must be filed within twenty-one (21) days after the date of this order. Plaintiff is advised that an amended complaint will supersede the original complaint and must be complete in itself without reference to the prior pleadings. The amended complaint must be signed, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the original complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued in that count. If Plaintiff fails to file an amended complaint within the time specified, the Court will assess a strike pursuant to 28 U.S.C. § 1915(g) and enter judgment.

Porterfield is further reminded that Federal Rule of Civil Procedure 8(a) requires his amended pleading to contain "a short and plain statement" of his claims. Additionally, Fed. R.

Civ. P. 11(a) requires "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's name — or by a party personally if the party is unrepresented by an attorney." An unrepresented party's signature on a pleading certifies to the Court that, *inter alia*, "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and] the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b).

In accordance with these Rules, Plaintiff must include in <u>one</u> signed document all of his amended legal claims as well as all factual allegations supporting them. Plaintiff's several letters and notices filed after his complaint do not comply with these Rules. (*See* ECF No. 4, No. 5, No. 13, No. 16 & No. 20 (referring to Judge Coffee and DRT J. Griffin, R. Hilson, Wilkins, C. Gatewood, G.I.U. M. Wynn and "all other staff").) Therefore, those submissions are not before the Court for screening. To the extent that Plaintiff wishes to pursue any persons or claims described in one or more of his notices and letters, he must specifically include each such person and/or claim in his amended complaint. District Courts "have no obligation to act as counsel or paralegal" to *pro se* litigants, *Pliler v. Ford*, 542 U.S. 225, 231 (2004), and yet that is what Plaintiff's letters and notices call upon this Court to do. If he elects to amend, Plaintiff himself must parse out in one document what he is trying to claim, against whom, and for what relief.

**SO ORDERED**, this 29th day of December, 2020.

            *s/John T. Fowlkes, Jr.*
            JOHN T. FOWLKES, JR.
            UNITED STATES DISTRICT JUDGE